UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MARK WILLIAM RONES and RONDA JACQUELINE RONES,<br><br>Debtors,<br>_____<br>WHISPERING WOODS CONDOMINIUM ASSOCIATION, INC.,<br><br>Appellant,<br><br>v.<br><br>MARK WILLIAM RONES and RONDA JACQUELINE RONES,<br><br>Appellees.<br>_____ | Civil Action No. 15-4271 (FLW)<br><br>**<u>OPINION</u>** |

**<u>WOLFSON, United States District Judge</u>**:

This matter comes before the Court on the appeal of Whispering Woods Condominium Association, Inc. ("Whispering Woods" or "Association") from an Order of the United States Bankruptcy Court for the District of New Jersey, rejecting Whispering Woods' objection to the bankruptcy plan proposed by debtors Mark Rones and Ronda Rones (collectively "Rones" or "Debtors").[1] This Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) and (c)(2).

For the reasons set forth below, the Order of the Bankruptcy Court is reversed in part and this matter is remanded for further proceedings consistent with this Opinion. Specifically, the Court holds that (1) New Jersey's Condominium Act, N.J.S.A. 46:8B-1 to -38 ("Condominium

---

[1] On August 27, 0215, Condominium Associations Institute ("Amicus") moved for leave to file a brief as *amicus curiae*, which the Court granted on December 23, 2015.

1

Act"), provides a limited priority for condominium association liens for unpaid assessments, which elevates a portion of such a lien above senior claims; and (2) since the lien at issue in this case has a limited priority over the mortgage on the property, and is therefore secured by a security interest in the Debtors' principal residence, it is partially secured and none of the lien can be stripped off under the anti-modification clause of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2).

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The background of this dispute has been set forth in detail before the Bankruptcy Court. Accordingly, the Court sets forth only those facts that are relevant to this appeal.[2]

The Rones own a condominium unit at 4191 Bayberry Court, Monmouth Junction, New Jersey (the "Property"), which was made part of Whispering Woods in a master deed recorded on January 20, 1984, with the Middlesex County Clerk (the "Master Deed"). The Bylaws of Whispering Woods, incorporated by reference within the Master Deed, required the Rones to pay certain fees and assessments.

On March 21, 2013, Whispering Woods filed a Notice of Lien on the Property for the Rones' unpaid fees and assessments, in the amount of $6,085.85 ("Lien"). On January 28, 2014, Whispering Woods filed an amended Lien to reflect an outstanding balance of $18,761.76. B.R. 27-28.

On December 30, 2014, the Rones filed for bankruptcy under Chapter 13 of the Bankruptcy Code. B.R. 1-5, 6-10. The Debtors valued the Property at $170,000 and represented that, as of the date of December 30, 2014, there was a mortgage on the Property, from Ocwen Loan Servicing, in the amount of $288,063.37 ("Mortgage"). B.R. 2, 4, 7, 9. With respect to the Association's Lien, the Debtors proposed to pay $1,494, which represented six months of the unpaid fees and

---

[2] Facts are drawn from the record supplied on appeal.

2

assessments, and have the remainder of the Lien be treated as unsecured and stripped off. *Id.* On January 15, 2015, Whispering Woods objected to confirmation of the Plan, arguing that its claim was protected from modification under the anti-modification provision, 11 U.S.C. § 1322(b)(2). B.R. 14-16.

On March 4, 2015, the Bankruptcy Court heard oral argument on the Association's objection. B.R. 92-100. On June 11, 2015, the Bankruptcy Court issued an opinion in which that court concluded that the Lien was wholly unsecured, and that except for the payment of six months of fees and assessments entitled to a statutory priority under the Condominium Act, the rest of the Lien could be stripped off in the Plan. *In re Rones*, 531 B.R. 526 (Bankr. D.N.J. 2015). The majority of the Bankruptcy Court's extensive analysis focused on the first inquiry under Section 1322: whether the Association's Lien was a security interest. *See id.* at 528-34. The Bankruptcy Court concluded that the Lien was a consensual lien and, therefore, a security interest – a conclusion which neither of the parties, nor Amicus, challenges. After making this determination, however, the Bankruptcy Court then went on to determine that the super-priority status provided by N.J.S.A. 46:8B-21(b)(1) does not elevate the Lien over any other senior claims, but only provides a statutory priority for *payment* of a portion, *i.e.*, six months, of those unpaid assessments. *See id.* at 534-35. Based on its determination that the limited priority granted to the Lien by the Condominium Act only "addresse[d] payment, not security," *id.* at 535, the Bankruptcy Court determined that the Lien was junior to the Mortgage on the Property, which exceeded the value of the Property. Therefore, the Bankruptcy Court held, somewhat confusingly, that the Association's Lien was both "wholly unsecured and may be stripped off in the Plan" and, at the same time, that the Debtors "may not strip off the portion of the Lien given statutory priority." *See id.* at 535-36.

On June 15, 2015, the Bankruptcy Court entered an Order consistent with its written opinion.  B.R. 87-88.  On June 23, 2015, the Association filed a notice of appeal to this Court.  B.R. 89-90.

## II.     STANDARD OF REVIEW

The standard of review for Bankruptcy Court decisions is determined by the nature of the issues on appeal.  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005).  Findings of fact are reviewed under a clearly erroneous standard, where a factual finding may be overturned only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citing *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous." *First Western SBLC, Inc. v. Mac-Tav. Inc.*, 231 B.R. 878, 881 (D.N.J. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985)), *aff'd*, 213 F.3d 628 (3d Cir. 2000).

On the other hand, legal conclusions from the Bankruptcy Court are subject to *de novo*, or plenary, review by the district court.  *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997).  If the issues on appeal present both findings of fact and conclusions of law, the applicable standard, "clearly erroneous" or "*de novo*," must be appropriately applied to each component.  *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-103 (3d Cir. 1981)).

Lastly, decisions on procedural bases are reviewed for abuse of discretion.  *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir.), *cert. denied*, 546 U.S. 814 (2005).  Deference

is the hallmark of abuse of discretion review. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Koon v. United States*, 518 U.S. 81, 98-99 (1996). Thus, an exercise of discretion is not disturbed unless the court committed a clear error of judgment in making its decision, meaning that it relied upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001); *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987); *see generally In re United Healthcare Sys., Inc.*, 396 F.3d at 249 (a district court reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof") (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir.1998)).

## III.   DISCUSSION

The Association argues the Bankruptcy Court's Order confirming the Plan was erroneous because, by virtue of the priority granted by the Condominium Act, the Association's Lien was not "wholly unsecured" and, thus, could not be stripped off. Assoc. Br. at 5  Specifically, the Association argues that the Bankruptcy Court misinterpreted the Condominium Act by "ascribing a different meaning to the statute [other] than its plain meaning" to reach its conclusion that the Condominium Act's limited-priority for assessment liens only "addresses payment, not security." *Id.* at 11-12. The Association also challenges the Bankruptcy Court's conclusion, interpreting the Condominium Act as an alternative source of collateral, which would provide an independent basis for finding the anti-modification clause inapplicable. *Id.* 15-19. Finally, the Association argues that the Bankruptcy Court's order violates public policy because it would result in creditors being treated better under Chapter 13 than under Chapter 7. *Id.* at 19-23.

5

The Debtors argue that the Bankruptcy Court's Order should be affirmed.  Specifically, the Debtors argue that the Association cannot invoke the limited priority provided by the Condominium Act and, at the same time, claim its lien is consensual to invoke the protection of the Anti-Modification Clause, since statutory liens are not security interests subject to the anti-modification clause.  Debtors' Br. at 3-4.  The Debtors also argue that the Bankruptcy Court's decision results in the Association "receiving everything to which it is entitled [to] under New Jersey law," that is, "six month[s] [of] priority payment, even though its lien is actually unsecured under the Bankruptcy Code."  *Id.* at 7.

Amicus argues that the Condominium Act provides a limited priority to a portion of a condominium association's lien for unpaid assessments, effectively making such liens "partially in first position and partially in third or fourth . . . but the lien remains as a single lien with dual priority."  Am. Br. 2.  Thus, under the "plain and unambiguous language" of the Condominium Act, which "clearly states a 'lien record' shall have 'limited priority'" and "does not use the word payment or grant the condominium association any special payment rights," Amicus argues the Association has a partially secured claim which cannot be stripped off.  *Id.* at 3-9.  Amicus also challenges the Bankruptcy Court's order on public policy grounds, arguing that "[i]f Bankruptcy Courts are permitted to strip away the non-priority portion of a condominium association's lien, the effect will be to unjustly enrich delinquent owners and burden every other owner to subsidize the difference."  *Id.* at 10-16.

The parties have not appealed, and this Court will not disturb, the Bankruptcy Court's determination that the Association's Lien was a consensual lien and, therefore, a security interest.  Instead, this appeal concerns only the Bankruptcy Court's interpretation of the Condominium Act, a question of law which is subject to *de novo* review.  *See Donaldson*, 104 F.3d at 551.  As

discussed in more detail below, this Court finds that the Bankruptcy Court's rejection of the Association's objection to the proposed Plan was in error because the court misinterpreted the Condominium Act's limited super-priority for assessment liens as "address[ing] payment, not security." *In re Rones*, 531 B.R. at 535. Based on that interpretation, the Bankruptcy Court incorrectly concluded that the Association's Lien in this case was unsecured. Instead, this Court finds that, pursuant to the Condominium Act, the Association's lien has a limited priority over the Mortgage on the Property and, therefore, is secured by a security interest in the debtor's principal residence and none of the Lien can be stripped off under Section 1322 of the Bankruptcy Code.

### A. The Anti-Modification Clause.

Under Chapter 13 of the Bankruptcy Code, a debtor may propose a repayment plan to make installments to creditors over the course of three to five years, depending on the debtor's monthly income level. 11 U.S.C. § 1322(d); *In re Cummings*, 214 B.R. 126, 127-28 (D.N.J. 1997). Debtors may modify creditors' claims into secured and unsecured portions. *See* 11 U.S.C. § 506(a). Any claim beyond the value of the property on which the lien is fixed is unsecured. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989).

Ordinarily, a debtor's bankruptcy plan may modify the unsecured portion of a lien down to the amount of the collateral securing it when the collateral is worth less than the lien, a process referred to as "stripping," "cramming down," or "bifurcating" the lien. *See* 11 U.S.C. § 506(a). However, debtors may not strip off a lien if it is "secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). This provision, known as the "anti-modification clause," has been interpreted by the Supreme Court to prohibit modification of claims in a bankruptcy plan where those claims are either secured or partially secured by a debtor's principal residence. *See Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331-32 (1993). However,

7

where such a claim is a completely undersecured claim, *i.e.*, where a senior claim fully exceeds the value of the principal residence, a junior claim, even when "secured" only by the debtor's principal residence, may be treated as unsecured and stripped off.  *See In re McDonald*, 205 F.3d 606, 613-14 (3d Cir.), *cert. denied*, 531 U.S. 822 (2000).  Thus, if even one dollar of a creditor's claim is secured by a security interest in a debtor's principal residence, then the *entire* claim – both secured and unsecured portions – cannot be modified under Section 1322.  *See In re Vidal*, No.'s 12-11758, 12-12319, 12-12340, 12-12563, 2013 Bankr. LEXIS 496, at *8 (Bankr. D. Del. Feb. 5, 2013) ("If there is even a single dollar of value available for the junior lienholder in the collateral, however, § 1322(b)(2) requires that the plan treat the junior claim as fully secured."); *see also In re Kennedy*, No. 12-11223, 2013 Bankr. LEXIS 2350, at *4 (Bankr. D. Del. June 10, 2013).  This rule is known as the "one dollar rule."

In this matter, the Bankruptcy Court determined that the anti-modification clause did not protect the Association's Lien because it was a consensual lien, and the only priority it enjoyed over the Mortgage was created by the Condominium Act.  Specifically, the Bankruptcy Court reasoned, in relevant part:

> The Act provides a simple method of perfecting the Lien and grants a portion of the Lien payment priority. *See* N.J. Stat. Ann. § 46:8B-21(a) and (b).  It provides the "lien shall be effective from and after the time of recording in the public records of the county in which the unit is located . . . ," that it "shall include only sums which are due and payable when the claim of lien is recorded . . . ," and that, except as to a limited amount, it "shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien." N.J. Stat. Ann. § 46:8B-21(a).  The Act is clear that priority is granted only for an amount equal to six months' worth of the customary charges of the condominium association.  It excludes the balance of the lien.  It is an exception to the general rule of "first in time, first in right," whereby the oldest recorded lien maintains senior priority status.  In limiting the amount a condominium association can collect, the Act addresses payment, not security.

>As discussed above, it is the Master Deed, made effective through the unit deeds, that creates the Lien. It is consensual, not statutory. It cannot be both. . . . The only source of the priority is the Act. The fact that the statute, subsequent to the creation of the Lien, provides a mechanism for partial payment through the grant of a priority of payment, does not elevate the collateral position of the Lien.

*Id.* at 534-35.

### B.   The Condominium Act provides a Limited Priority to Association Liens for Unpaid Assessments.

The Bankruptcy Court interpreted the limited priority provided for assessment liens by the Condominium Act as addressing "payment" not "security." The Bankruptcy Court therefore concluded that such a priority does not "elevate the collateral position of the Lien." *In re Rones*, 531 B.R. at 534-35. However, this conclusion is in conflict with the plain language of the Condominium Act.

"The determination of property rights and interests in bankruptcy cases is decided by state law." *Musolino v. Orr*, No. 14-514, 2014 U.S. Dist. LEXIS 101280, at *15 n.7 (D.N.J. July 16, 2014) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). Similar to a federal district court sitting in diversity, this Court must apply New Jersey's substantive law as that law has been set forth by its legislature or Supreme Court. *See Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). "When a state's highest court has yet to speak on a particular issue, it becomes the role of the federal court to predict how the state's highest court would decide the issue were it confronted with the problem." *Id.* (quoting *Packard*, 994 F.2d at 1046) (internal citation marks and alterations omitted). In predicting how the New Jersey Supreme Court would rule, the district court must "give careful consideration to decisions of the [New Jersey's] intermediate appellate courts and . . . aim to eliminate inconsistency between the federal and state courts in the application of [New Jersey] law." *Id.* (internal citations omitted).

9

New Jersey's Condominium Act, N.J.S.A. 46:8B-1 to -38, originally enacted in 1969, was amended in 1995 to provide a limited super-priority to liens recorded by condominium associations for unpaid assessments. N.J.S.A. 46:8B-21(b)(1); *L.* 1995, *c.* 354, § 4. The Condominium Act provides, in relevant part:

> a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. . . . Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.
>
> b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:
>
> (1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

N.J.S.A. 46:8B-21(b)(1).

In considering the language of a particular statute, the New Jersey Supreme Court has instructed that the "the primary goal of 'divin[ing] and effectuat[ing] the Legislature's intent,' begins with 'the language of the statute, giving the terms used therein their ordinary and accepted meaning.'" *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 835 (D.N.J. 2011) (quoting *State v. Shelley*, 205 N.J. 320, 323 (2011)).

> When the statutory language is clear and unambiguous, there is no need to consider extrinsic aids. Where, however, the language is ambiguous, the Supreme Court consults legislative history and other extrinsic evidence for interpretive guidance. Furthermore, the Supreme Court considers "not only the particular statute in question, but also the entire legislative scheme of which it is a part."

*Id.* (citations omitted).

Here, the Bankruptcy Court's interpretation conflicts with the plain language of the Condominium Act.  Specifically, the Bankruptcy Court read the Condominium Act to provide that "*except as to a limited amount*, it [an assessment lien] . . . 'shall be subordinate to . . . any other lien.'"  *In re Rones*, 531 B.R. at 536 (quoting N.J.S.A. 46:8B-21(a)) (emphasis added).  However, this interpretation ignores the plain text of the Condominium Act.  The Condominium Act's limited priority for assessment liens does not apply only to "payment" of those liens.  Instead, it provides that "[a] *lien* recorded pursuant to subsection a. of this section *shall have a limited priority* over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes" for "the amount . . . which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien."[3]  N.J.S.A. 46:8B-21(b)(1) (emphasis added); *see Chase Manhattan Mortg. Corp. v. Spina*, 325 N.J. Super. 42, 47 (Ch. Div. 1998) ("This statute provides . . . that a condominium association lien will have a limited priority over all other prior recorded mortgages and liens.  The priority is limited to liens which are the result of customary condominium association assessments unpaid for a maximum of up to six months prior to the recording of the lien."), *aff'd o.b.*, 325 N.J. Super. 1 (App. Div. 1999).  Indeed, in a recent, factually similar bankruptcy decision, the Bankruptcy Court observed that a *lien* for unpaid assessments recorded pursuant to N.J.S.A. 46:8B-21(a) is granted "a limited priority" by N.J.S.A. 46:8B-21(b)(1) and, because of this priority, a debtor could not cram down its condominium association's lien for unpaid assessments because it was "secured by at least some

---

[3] Moreover, other provisions of the Condominium Act also refer to "liens granted priority," N.J.S.A. 46:8B-21(b)(3), and "[t]he priority granted to a lien pursuant to this subsection." N.J.S.A. 46:8B-21(b)(4).

11

equity in the property." *See In re Robinson*, No. 11-26981, 2012 Bankr. LEXIS 1033, *7-8, 12-13 (Bankr. D.N.J. Mar. 2, 2012). Thus, it is the lien itself, not merely the payment of that lien, which is granted a limited priority by the Condominium Act.[4]

In short, the Condominium Act does not merely provide for the *payment* of six months of a condominium association's unpaid assessments prior to the payment of other liens. Instead, it ensures that result by *elevating* the collateral position of a portion of a duly-recorded lien on those unpaid assessments over certain other senior claims, such as the Mortgage in this case. Once recorded, the Lien created by the Master Deed became a single lien with dual priority. The size of the elevated portion was measured by the assessments due for the six-month period prior to the recording of the Lien, and the remainder of the Lien remained junior to prior-recorded claims. *See* N.J.S.A. 46:8B-21(b). Therefore, the Bankruptcy Court's holding that N.J.S.A. 46:8B-21 did not change the priority of a portion of the Association's Lien was error.

### C.  The Condominium Act is Not a Separate Source of Collateral for the Lien.

The Bankruptcy Court also concluded, alternatively and in *dicta*, that it could not accept the Association's argument that "the statutory priority provided by the Act gives it the security necessary to be subject to the antimodification provision," because then the Lien "would be secured not only by the security interest set forth in the Master Deed, but also through the Act," and, therefore, "would remove the Lien from the protection of the anti-modification clause." *In re Rones*, 531 B.R. at 535. This is incorrect.

---

[4] The legislative history of the Condominium Act indicates that New Jersey's Legislature intended the protection afforded to a Condominium Association's Lien, via the limited grant of super-priority, to apply in the foreclosure setting and, indeed, the Legislature may not have contemplated the effect such a grant of partial super-priority for those liens would have in the context of a bankruptcy proceeding. *See Assemb. A1282 Sponsor Stmt.* (as introduced, February 7, 1994). Nevertheless, the Court is constrained to apply the Condominium Act's terms where, as here, they are plain and unambiguous.

The Anti-Modification Clause does not apply where a claim is secured by something other than a security interest in the debtor's principal residence.  11 U.S.C. § 1322(b)(2); *see In re Cummings*, 214 B.R. 126, 128 (D.N.J. 1997) (finding mortgage on debtor's principal residence not protected from bifurcation by Section 1322 because it was secured by "two types of additional collateral," the debtor's personal property and fixtures, and a life insurance policy).  However, as the Bankruptcy Court itself observed when determining whether the Lien was consensual or statutory, the Condominium Act did not create the Lien – it was created by the Master Deed.  *See In re Rones*, 531 B.R. at 533-34.  Instead, as discussed above, the Condominium Act merely altered the priority of a portion of the Lien.  Therefore, the Condominium Act does not serve as a source of collateral which would remove the Lien from the protection of the Anti-Modification Clause.

> **D.  The Anti-Modification Clause Prohibits Stripping Off of the Association's Lien because It is Partially Secured by the Debtor's Principal Residence.**

The Bankruptcy Court erred in treating the Association's Lien as a "wholly unsecured" claim which could be stripped off (either in whole or in part); instead this Court finds that the Lien was partially secured by a security interest in the debtor's principal residence.

As discussed above, the Association's Lien had a limited priority pursuant to N.J.S.A. N.J.S.A. 46:8B-21, measured by the amount of the assessments due for the six-month period prior to the recording of the lien, $1,494, over the Mortgage on the Property.  By operation of N.J.S.A. N.J.S.A. 46:8B-21, this limited portion of the Lien was elevated in priority over the Mortgage. Therefore, under the "one dollar" rule, because a portion of the Lien was secured by a security interest in the debtor's principal residence, no portion of the Association's lien could be stripped off under Section 1322.  *See In re McDonald*, 205 F.3d at 613-14.

Accordingly, the Bankruptcy Court's holding that the unsecured portion of the Association Lien could be stripped off was error.

## IV. CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court is reversed in part and this matter is remanded for further proceedings consistent with this Opinion.

Dated: February 17, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge